PETER M. ANGULO, ESQ.
**ANGULO LAW GROUP**
5545 S. Mountain Vista St. Ste. F
Las Vegas, NV 89120
Tel: (702) 384-8000
Fax: (702) 384-8200
Email: pangulo@angulolawgroup.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARIO IZZO and DANIELLE IZZO, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF HENDERSON; SUNRISE HOSPITAL AND MEDICAL CENTER, LLC; TROY STAR, in his individual and official capacity; DAISY RODRIGUEZ, in her individual and official capacity; DOES 1 through 20, and ROE ENTITIES 1 through 10,<br><br>Defendant(s). | Case No.<br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

COMES NOW Plaintiffs, MARIO and DANIELLE IZZO, by and through their attorney of record, PETER M. ANGULO, ESQ., of the ANGULO LAW GROUP, and hereby complains and alleges as follows:

## PARTIES AND JURISDICTION

1.      Plaintiffs were, at all relevant times herein, residents of Clark County, Nevada.

2.      At all relevant times herein, Defendant City of Henderson ("Henderson") was a municipal entity located in Clark County, Nevada, with oversight and control of the Henderson Police Department ("HPD").

3.      At all relevant times herein, Defendant Sunrise Hospital and Medical Center, LLC ("Sunrise") was a foreign corporation licensed and operating as a business in Clark County, Nevada.

4.      Defendant Troy Starr ("Starr"), at all relevant times herein, was a police officer for the Henderson Police Department, acting in the course and scope of his duties and under color of law, and

1

was a resident of Clark County, Nevada.

5.    Defendant Daisy Rodriguez ("Rodriguez"), at all relevant times herein, was a police officer for the Henderson Police Department, acting in the course and scope of her duties and under color of law, and was a resident of Clark County, Nevada.

6.    Defendant DOES 1-10 are individuals from the City of Henderson directly involved in the events identified in this Complaint—whose identities are yet unknown--including, but not limited to, the physical interaction with Plaintiffs described herein; the preparation of search warrant(s) for Plaintiffs' home;  and the wrongful seizure and retention of Plaintiffs' personal property.  These individuals, when identified, will be sued in their individual and official capacities.

7.    Defendant DOES 11-20 are security personnel and/or other employees of Sunrise who participated in the physical attack upon Plaintiffs at the hospital or otherwise contributed to the events described in this Complaint. These individuals, when identified, will be sued in their individual and official capacities.

8.    ROE ENTITIES 1-10 are business organizations involved with Defendants, and/or each of them, to provide medical advice/information to police in potential domestic abuse situations and/or security for Sunrise Hospital.

9.    That at all times mentioned herein, upon information and belief, Defendant(s) DOES 1-20 and ROE CORPORATIONS 1-10 ("Roes") were entities, whether individual, corporate, limited liability company and/or companies, associates, partnership(s), agents or otherwise, who are in some manner responsible for the injuries and/or negligence described herein in association with Defendants CITY OF HENDERSON and SUNRISE HOSPITAL AND MEDICAL CENTER.  Pursuant to NRCP 10(a), the identities of the Defendants, DOES 1 through 20 and ROES 1 through 10, are unknown at this time and may be individuals, partnerships, companies, corporations, or other entity which have damaged Plaintiffs; Plaintiffs allege that each Defendant designated herein as DOE or ROE CORPORATION are responsible in some manner for the damages alleged herein, owing to the Plaintiffs a duty of reasonable care. Therefore,

Plaintiffs sue said Defendant(s) by such fictitious names as those set forth herein, and requests leave of the Court to amend this Complaint to name the Defendants specifically when their true identities become known.

10.    Specifically at the time of filing, Plaintiffs contemplate naming Defendants ROE CORPORATIONS 1-10, an employer or other party related to Defendants CITY OF HENDERSON and SUNRISE HOSPITAL AND MEDICAL CENTER, by way of agency theory or vicarious liability, with which at all times mentioned herein acted either individually/separately or within the scope and course of said agency, employment, partnership or joint venture with knowledge, permission, and consent of all other Defendant(s), in so performing the actions that resulted in the events and happenings referred hereto, and which proximately caused injury and damage to Plaintiffs as alleged herein. At the time of filing, Plaintiffs are unaware of the specific corporate structure which may incorporate Defendant ROE CORPORATIONS 1-10. Therefore, Plaintiffs request leave of the Court to amend this Complaint to name the Defendant(s) specifically when their true identities become known. Plaintiffs anticipate that such persons or entities shall not be known until the formal commencement of discovery in this matter.

11.    The wrongful actions upon which this suit are brought occurred in Clark County, Nevada.

12.    This Court is vested with jurisdiction to hear these claims under 28 USC § 1331 and 1343 inasmuch as Plaintiffs raise these claims under 42 USC § 1983 for violations of acknowledged constitutional rights and under 42 USC § 12132 and 29 USC § 794.

13.    Plaintiffs are also asserting claims under Nevada Constitutional and Tort law, over which this Court has jurisdiction pursuant to 28 USC § 1367, inasmuch as these events occurred in Clark County, Nevada.

14.    Venue is proper before this Court pursuant to 28 USC § 1391.

## FACTUAL ALLEGATIONS

15.    On the morning of January 23, 2024, Plaintiffs' one-month-old baby daughter developed symptoms of a cold. The following morning, she began to projectile vomit repeatedly—which continued

throughout the day until that evening, when Plaintiffs took her to the Emergency Room at Sunrise Hospital to have her examined.

16.    In the early morning hours of January 25, 2024, due to persistent abnormal sodium levels, the baby was scheduled for a CT scan to check for potential brain issues.  The test result indicated there was a brain bleed and she was prepped for immediate surgery—which was undertaken at 8:13 am.

17.    Plaintiffs, being worried for their daughter's well-being, had not slept since arriving at the hospital.

18.    Plaintiffs were informed by the Sunrise emergency room physician that law enforcement and Child Protective Services were required to be initially contacted due to the presence of the brain bleed.

19.    While the baby was in surgery, HPD detectives Starr and Rodriguez arrived and interviewed Plaintiffs separately.  Their demeanor at this time was both respectful and professional. They assured Plaintiffs there were no real concerns and to focus on their child.

20.    After the surgery was completed, the surgeon met with Plaintiffs, informing them she saw no signs of any physical abuse to the baby—that the brain bleed was most likely caused by a blood disorder and the lack of Vitamin K at birth.

21.    The contemporary medical records also clearly indicated there was a healing skull fracture which was determined to be birth-related.

22.    The doctor also informed Plaintiffs she had apprised the police of these facts/conclusions.

23.    Shortly after this meeting, Plaintiffs became aware HPD officers were at their home seizing items and photographing the home's interior.

24.    At around this point in time, Starr and Rodriguez re-entered the room where Plaintiffs were located at Sunrise and aggressively demanded the immediate surrender of their cell phones.

25.    Plaintiffs asked to see a warrant supporting this demand.  Starr and/or Rodriguez refused

and repeated the demand to relinquish the cell phones.

26.     Without any proof of a legal right to seize this personal property, Plaintiffs properly declined to turn over their phones.

27.     In response, Starr, with the assistance of several Sunrise security personnel, physically attacked Plaintiff Mario Izzo to seize his phone—ultimately wresting it away from him and taking possession of it.

28.     At about this same time, Rodriguez forcibly grabbed Danielle's phone away from her.

29.     There was no warrant extant at this time authorizing the seizure of this private property from Plaintiffs.

30.     After these wrongful actions by HPD, CPS contacted Plaintiffs, informing them their boys would be placed in a safety plan with Plaintiffs' parents and Plaintiffs were prohibited from being alone with them.

31.     Several hours later, HPD Sergeant Abernathy met with Plaintiffs, apologizing for his officers' misconduct and confirming no charges would be filed against Plaintiffs due to the fact there was no evidence of any physical abuse to their baby.  He further provided them information to file an IAB complaint with Henderson.

32.     Despite the fact there was no probable cause for the warrant and that no charges were to be made against Plaintiffs, Henderson continued to retain possession of all of Plaintiffs' personal property that had been seized—including the cell phones--for another 5 days, without any legal justification.

33.     Plaintiff Mario Izzo's employment was, and is, heavily dependent on his ability to receive and quickly respond to generated leads and requests for service. The unjustified seizure and retention of their personal property meant Plaintiffs lost important job opportunities—resulting in a loss of income to their family.

34. Plaintiffs filed an internal affairs complaint for these actions. To Plaintiff's knowledge, no discipline of any sort has issued against Henderson employees for this wrongful conduct.

35. Plaintiffs have suffered, and continue to suffer emotional distress caused by these events,

## FIRST CAUSE OF ACTION
### (Unlawful Use of Force)

36. Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 35 as though fully set forth herein.

37. The use of force by Starr, Rodriguez and the Sunrise security personnel while at Sunrise, against Plaintiffs was done without probable cause or legal justification and was objectively unreasonable under the circumstance.

38. Such unjustified use of force violates the protections afforded Plaintiffs under the Fourth Amendment.

39. Such actions were taken in the absence of emergent circumstances and were done deliberately, intentionally, and with deliberate or reckless indifference to the fact it would inflict upon Plaintiffs unwarranted physical injury, pain and suffering.

40. The actions by Defendants were joint in their design and effect to violate Plaintiffs' Fourth Amendment rights and were done under the color of law.

41. Upon information and belief, Defendants condoned the use of unjustified force by their employees with the understanding and acceptance such actions can cause unnecessary injury to private citizens and violate their civil rights.

42. The actions of the individual defendants were undertaken pursuant to a policy, practice, or scheme condoned within Defendants' operational structures to allow the use of excessive and unjustified force and/or to refuse to discipline employees for such improper use of force.

43. Defendants' actions have caused, and continue to cause, Plaintiffs to suffer from this event in an amount in excess of $75,000.00.

44. The intentional, deliberate, and recklessly or deliberately indifferent actions of Defendants violate Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution and under Article 1, Secs. 8, 18 and 24 of the Nevada Constitution.

## SECOND CAUSE OF ACTION
### (Assault/Battery)

45. Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 44 as though fully set forth herein.

46. Defendants' actions at Sunrise were intended to, and actually did, place Plaintiffs in reasonable apprehension of immediate harmful or offensive touching.

47. Defendants intended to cause the harmful or offensive touching to which Plaintiffs did not consent.

48. Thereafter, Defendants did willfully and intentionally inflict unlawful force or violence upon Plaintiffs.

49. As a consequence, Plaintiffs suffered emotional and physical injuries resulting in pain and suffering, directly caused by these actions in an amount in excess of $75,000.00.

50. Defendants' improper and unjustified actions constitute assault and/or battery under the laws of the State of Nevada.

## THIRD CAUSE OF ACTION
### (Unlawful Search and Seizure)

51. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 50 as though fully set forth herein.

52. The search warrant obtained by Defendants to search Plaintiffs' home and seize their personal property was done in the absence of probable cause—as there was no reasonable and/or credible evidence of any abuse inflicted upon Plaintiffs' infant child.

53. Defendants were specifically informed and aware of the medical opinion that the injuries

seen on the infant were caused by events unrelated to any act of child abuse at the time the warrant was obtained.

54.    The warrant was, therefore, improperly obtained and did not provide justification for the violation of Plaintiffs' property rights.

55.    There was no warrant allowing the seizure of Plaintiffs' personal cell phones at the time Defendants acted to seize them at Sunrise.

56.    There was no pressing need to seize Plaintiffs' cell phones and no legal justification for same at the time those phones were wrongfully seized.

57.    After it was clear there was no probable cause for a criminal prosecution, Defendants continued to maintain control and possession of Plaintiffs' personal property without lawful cause or justification.

58.    In doing these acts, Defendants acted jointly and under color of state law in unlawfully seizing and retaining Plaintiffs' personal property.

59.    Said actions were done, further, pursuant to a plan, policy or scheme of Defendants which authorized and condoned such wrongful actions.

60.    These actions caused damage to Plaintiffs, emotionally and economically, in an amount in excess of $75,000,00.

61.    Such actions violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution and under Article 1, Secs. 8, 18, 24 of the Nevada Constitution.

## FOURTH CAUSE OF ACTION
### (Conversion)

62.    Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 61 as though fully set forth herein.

63.    The actions of Defendants, and each of them, was to assert wrongful dominion and control over Plaintiffs' private property without proper justification or cause.

8

64. Such actions were done jointly and under color of law.

65. These actions were in denial of, or inconsistent with, Plaintiffs' claim to title or rights therein or in derogation, exclusion, or defiance of such title or rights.

66. These acts of conversion caused direct damage to Plaintiffs, emotionally and economically, in an amount in excess of $75,000.00.

## FIFTH CAUSE OF ACTION
### (Negligence)

67. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 66 as though fully set forth herein.

68. To the extent any of these actions were not taken out of deliberate or reckless indifference or deliberate intent, they were negligently undertaken and directly resulted in harm to Plaintiffs as set forth above.

69. Defendants, and each of them, had a duty to not cause harm or to inflict injuries upon Plaintiffs.

70. The above-described actions constitute a breach of that duty.

71. Said breach directly caused harm to Plaintiffs in terms of physical, emotional and economic injuries, pain and suffering, and loss of privileges to which they would otherwise be entitled.

72. Said acts were not discretionary as they did not involve decisions considering social, economic, or political policies.

73. As a consequence of these breaches, Plaintiffs have been, and continue to be, directly injured in an amount in excess of $75,000.

## SIXTH CAUSE OF ACTION
### (NIED/IED)

74. Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 73 as though fully set forth herein.

75.    At the time the above actions were committed against Plaintiffs, Defendants knew, or should have known, Plaintiffs were in an exceptionally vulnerable state—mentally and emotionally—due to their concerns over the well-being of their infant child.

76.    The actions by Defendants were negligent and/or intentional and were of the sort, under these circumstances, to be considered extreme and outrageous.

77.    As a direct consequence of these actions, Plaintiffs were, and continue to be, injured—physically, mentally, emotionally, and economically in an amount in excess of $75,000.00.

WHEREFORE, Plaintiffs, expressly reserving their right to amend this Complaint at the time of the trial herein to include all items of damage not yet ascertained, demand judgment against Defendants, as follows:

1.    For Declaratory Judgment in their favor of their established rights and the violation of same against Defendants;

2.    For compensatory and special damages in an amount in excess of $75,000;

4.    For pre- and post-judgment interest as provided by the law;

5.    For attorney's fees and costs incurred and to be incurred herein; and

6.    For such other and further relief as the Court deems just and proper in this matter.

Demand is hereby made by Plaintiffs for trial by jury in the above-entitled action.

DATED this _10_ day of December, 2024.

ANGULO LAW GROUP

By_____
PETER M. ANGULO, ESQ.
Nevada Bar No. 003672
5545 S. Mountain Vista Street, Suite F
Las Vegas, Nevada  89120
Attorneys for Plaintiffs